1

2                                                                          "O"

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                        CENTRAL DISTRICT OF CALIFORNIA

PAUL L. WANG,                          )   Case No. CV 05-8023 AN
11
                 Plaintiff,            )   MEMORANDUM AND ORDER
12                                     )
          v.                           )
13                                     )
JO ANNE B. BARNHART,                   )
14   COMMISSIONER OF THE SOCIAL        )
     SECURITY ADMINISTRATION,          )
15                                     )
                 Defendant.            )
16   ——————————————————————            )

17                          **I.  INTRODUCTION**

18          Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final

19   decision of the Commissioner of the Social Security Administration (the

20   "Commissioner") denying his claim for disability insurance benefits ("DIB") under Title

21   II of the Social Security Act ("Act").  Both parties have consented to proceed before the

22   Magistrate Judge.  Pursuant to the Court's Case Management Order, the parties have filed

23   a joint stipulation and request for an order summarily deciding issues concerning remand

24   and/or immediate payment of benefits ("JS").

25                          **II.  BACKGROUND**

26          Plaintiff was born on November 14, 1958, and was 46 years old at the time of the

27   administrative hearing.  [Administrative Record ("AR") at 22, 61.]  Plaintiff has a B.A.

28   degree in English and completed some graduate work in accounting.  [AR at 22-23.]

1  Plaintiff has past relevant work experience as an accountant professional and certified
2  public accountant.  [AR at 29.]

3       Plaintiff filed his application for DIB on October 7, 2003.  [AR at 61-63.]  Plaintiff
4  claims that he has been disabled since November 7, 2002, due to myalgia, a hamstring
5  injury, right Achilles tendon injury, and inability to sleep or concentrate.  [AR at 23, 72.]
6  Plaintiff's application was denied at the administrative level.  [AR at 34-37.]  At
7  Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on
8  January 12, 2005.  [AR at 375-442.]  On January 21, 2005, the ALJ issued a decision
9  denying Plaintiff's application for benefits.  [AR at 22-29.]  When the Appeals Council
10 denied review, the ALJ's decision became the final decision of the Commissioner.  [AR
11 at 6-8.]  Plaintiff then commenced this action for judicial review.

12

13                                   **III.  <u>DISCUSSION</u>**

14 **A.    <u>Standard of Review</u>**

15       This Court must review the record as a whole and consider adverse as well as
16 supporting evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The
17 Commissioner's final decision affirming an ALJ's decision that a claimant is not disabled
18 must be upheld if the ALJ's findings are supported by substantial evidence in the record
19 and the proper legal standards were applied.  *See Curry v. Sullivan*, 925 F.2d 1127, 1129
20 (9th Cir. 1990).  The harmless-error rule applies.  *Id.*  at 1131.  "Substantial evidence
21 means more than a mere scintilla, but less than a preponderance."  *Magallanes v. Bowen*,
22 881 F.2d 747, 750 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human*
23 *Services*, 846 F.2d 573, 576 (9th Cir. 1988).  It is further defined as "such relevant
24 evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see*
25 *also*, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971).
26 The ALJ is responsible for determining credibility, resolving conflicting testimony,
27 resolving ambiguities, and "is entitled to draw inferences 'logically flowing from the
28 evidence.'"  *Andrews*, 53 F.3d at 1039; *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir.

1  1996).  Consequently, inferences and conclusions as the ALJ may reasonably draw from
2  the evidence are upheld.  *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
3  Likewise, an ALJ's findings are upheld where the evidence is susceptible of more than
4  one rational interpretation.  *Andrews*, 53 F.3d at 1039-1040.

5      To collect DIB or SSI benefits, Plaintiff must suffer from a "disability."  42 U.S.C.
6  §§ 423(a)(1)(D); 1382(a).  To be disabled within the meaning of the Act, a claimant must
7  suffer from a "medically determinable physical or mental impairment which can be
8  expected to result in death or which has lasted or can be expected to last for a continuous
9  period of not less than 12 months."  42 U.S.C. §§423(d)(1)(A); 1382c(a)(3)(A).  The
10  impairment must be of "such severity that [the claimant] is not only unable to do [his or
11  her] previous work but cannot, considering [his or her] age, education, and work
12  experience, engage in any other kind of substantial gainful work which exists in the
13  national economy. . . ."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).  The claimant has
14  the burden of showing that she or he is disabled.  42 U.S.C. §§ 423(d)(5);
15  1382c(a)(3)(H)(i) ; *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).

16  **B.    The Five-Step Sequential Analysis**

17      The Social Security Regulations use a five-step sequential analysis for making DIB
18  and SSI disability determinations.  20 C.F.R. §§ 404.1520, 416.920.  The first step asks
19  whether the claimant is working.  The second step asks whether the claimant has a
20  "severe" impairment, which is defined as an impairment which "significantly" -- more
21  than minimally -- limits an individual's ability to perform basic work activities.  20
22  C.F.R. §§ 404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 154,  107 S.Ct. 2287, 96
23  L.Ed.2d 119 (1987).  However, this step two determination is "'a *de minimis* screening
24  device to dispose of groundless claims.'"  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th
25  Cir. 2001) (internal citations omitted).  The third step asks whether the claimant has an
26  impairment which meets or equals the criteria of any impairment identified in the
27  appendix to the Social Security Regulations commonly referred to as the "Listings."  *Id*.
28      The fourth and fifth steps require that the ALJ assess the claimant's residual

1   functional capacity ("RFC").   RFC is a determination of a claimant's remaining abilities
2   to perform work.   20 C.F.R. §§ 404.1545, 416.945(a). In determining a claimant's
3   physical limitations, the ALJ considers the claimant's ability to lift weight, sit-stand,
4   push-pull, etc. 20 C.F.R. §§ 404.1545(b), 416.945(b).  Mental, environmental and other
5   limitations such as the ability to see and hear are also part of the RFC determination.  20
6   C.F.R. §§ 404.1545(c) and (d), 416.945(c) and (d).   A claimant's limitations are
7   categorized as either exertional or non-exertional; exertional limitations are those based
8   upon strength considerations alone. *Cooper v. Sullivan*, 880 F.2d 1152, 1156 (9th Cir.
9   1989).  Non-exertional limitations are unrelated to strength and include "mental, sensory,
10   postural, manipulative, and environmental limitations." *Id*.  The exertional requirements
11   of work are classified as sedentary, light, medium, heavy and very heavy.  20 C.F.R. §§
12   404.1567, 416.967.

13       Once the RFC is determined, the fourth step asks whether the claimant can perform
14   his or her past relevant work; at this step the claimant also has the burden of proving he
15   or she is unable to perform past relevant work.

16       At the fifth step in the analysis, the burden shifts to the Commissioner to prove that
17   the claimant, based on his or her age, education, work experience, and residual functional
18   capacity, can perform other substantial and gainful work existing in the regional or
19   national economy.  20 C.F.R. §§ 404.1520, 416.920.  The Commissioner can satisfy this
20   fifth step burden by either (1) applying the Medical-Vocational Guidelines (the "Grids")
21   found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, or (2) taking the
22   testimony of a Vocational Expert ("VE"). *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th
23   Cir. 1988).  However, the Commissioner cannot rely upon the Grids and must use a VE
24   where the claimant's non-exertional limitations are 'sufficiently severe' so as to
25   significantly limit the claimant's ability to perform the full range of sedentary, light, or
26   medium work. *Id*.

27       If the answer to any of the questions in the five-step analysis establishes the
28   claimant is or is not disabled, the evaluation ends.  20 C.F.R. §§ 404.1520(a), 416.920(a);

1    *see also Bowen v. Yuckert*, 482 U.S. at 140.

2    In the decision denying benefits, the ALJ determined that Plaintiff had not engaged

3    in substantial gainful activity since his alleged onset date.  [AR at 23.]  While the ALJ

4    found that Plaintiff suffers from the severe impairments of myofascial pain disorder, a

5    hamstring condition, pectoral strain, right wrist tendinitis, and right Achilles

6    tendinopathy, he determined that Plaintiff's impairments did not meet or equal one of the

7    impairments in the Listings.  [AR at 23.]  The ALJ assessed Plaintiff with an RFC to lift

8    and carry 20 pounds occasionally and 10 pounds frequently, stand and walk two hours

9    in an eight-hour workday and sit six hours in an eight-hour workday.  [AR at 27.]  The

10    ALJ further found that Plaintiff is not able to climb ladders or scaffolds, work at heights,

11    or engage in more than occasional handling and gripping or more than average fine and

12    gross manipulations.  [AR at 27.]  Based on this RFC, the ALJ concluded that Plaintiff

13    was capable of performing his past relevant work as a certified public accountant or

14    accountant professional.  [AR at 22.]

15    **C.    <u>Analysis of Disputed Issue</u>**

16    Plaintiff asserts that the ALJ failed to properly consider the opinion of his treating

17    physician, Philip A. Sobol, M.D.  The Commissioner disagrees.

18    Dr. Sobol first performed an orthopedic evaluation of Plaintiff on December 9,

19    2002, for workers' compensation purposes.  [AR at 256-68.]  Dr. Sobol saw Plaintiff on

20    five more occasions before issuing a permanent and stationary report on August 1, 2003.

21    [AR at 236-55.]  Based on the examination results, Dr. Sobol diagnosed Plaintiff with

22    chronic bilateral hamstring strain, right Achilles tendon strain, cervicothoracic

23    musculoligamentous sprain/strain with associated reversal of the lordosis (asymptomatic),

24    lumbosacral musculoligamentous sprain/strain with associated spondylosis at L2-L3 and

25    L5-S1 and 2.0 millimeter, disc bulge and small tear posterior peripheral annulus at L5-S1

26    per MRI (improved), bilateral shoulder periscapular myofascial strain (improved),

27    bilateral forearm and wrist overuse tendinitis (improved), history of fibromyalgia,

28    depression, anxiety, and stress.  [AR at 247-48.]  Dr. Sobol concluded that Plaintiff's

condition limited him to sedentary work.  [AR at 250.]  Dr. Sobol also found that Plaintiff was precluded from prolonged sitting and would periodically need to change his position from sitting to standing and walking.  [AR at 250.]

Medical expert David Brown, M.D. reviewed Plaintiff's medical records and testified at the administrative hearing.  [AR at 409-29.]  Dr. Brown observed that Plaintiff has medically determinable impairments consisting of myofascial pain disorder, hamstring condition, pectoral strain, right wrist tendinitis, and right ankle Achilles tendinopathy.  [AR at 26.]  Dr. Brown found that, out of an eight-hour day, Plaintiff could sit for six hours and stand and walk for two hours.  [AR at 426.]  Dr. Brown also determined that Plaintiff could frequently lift up to ten pounds, occasionally lift up to 20 pounds, occasionally engage in handling and gripping and average fine and gross manipulation, but was totally restricted from work activities involving climbing ladders and scaffolds and working at heights.  [AR at 26, 426-28.]

The ALJ assigned "the most weight" to Dr. Brown's opinion.  The ALJ emphasized that Dr. Brown had reviewed the entire medical evidence of record and had the opportunity to observe Plaintiff at the hearing.  [AR at 27.]   The ALJ went on to assess Plaintiff with an RFC consistent with Dr. Brown's opinion.  [*Id.*]

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  *See* 20 C.F.R. § 404.1502; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff.  *Lester*, 81 F.3d at 830; *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996)("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").  "However, an ALJ need not give controlling weight to the opinion of a treating physician."  *Batson*

1    *v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004).  "The treating
2    physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of
3    disability."  *Magallanes*, 881 F.2d at 751 (citations omitted).  "The ALJ may disregard
4    the treating physician's opinion whether or not that opinion is contradicted." *Batson*, 359
5    F.3d at 1159 (quoting *Magallanes*, 881 F.2d at 751).  Where the record contains
6    conflicting medical evidence, the ALJ is charged with determining credibility and
7    resolving the conflict. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  When
8    the treating physician's opinion is not uncontroverted, the ALJ may reject it by setting
9    forth specific and legitimate reasons for doing so which are based on substantial evidence
10   in the record. *Smolen*, 80 F.3d at 1285.

11           In assessing Plaintiff's RFC, the ALJ stated that Plaintiff's treating physicians "did
12   not report any limitations."  [AR at 27.]  However, in evaluating Plaintiff for workers'
13   compensation purposes, Dr. Sobol expressly precluded Plaintiff from engaging in
14   "prolonged sitting."  [AR at 250.] The ALJ was required to evaluate this terminology like
15   any other medical opinion.  *See Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal.
16   Jan.22, 2002); *see also Coria v. Heckler*, 750 F.2d 245, 247 (3rd Cir. 1984) ("the ALJ
17   should evaluate the objective medical findings set forth in the medical reports for
18   submission with the worker's compensation claim by the same standards that s/he uses
19   to evaluate medical findings in reports made in the first instance for the Social Security
20   claim").  Despite the fact that Dr. Sobol did not define what he meant by his use of the
21   term "no prolonged sitting," this reference has been reasonably interpreted to mean sitting
22   for "at least half of the work day."  *See Booth*, 181 F.Supp.2d at 1108 (stating "[i]t is
23   logical to assume that [the treating doctor's] reference to 'prolonged' sitting means sitting
24   at least half of the work day").  Assuming that interpretation is correct, Dr. Brown's
25   opinion--as well as the ALJ's determination of Plaintiff's functional capacity--that
26   Plaintiff would be able to sit for eight hours in an eight-hour workday contradicts Dr.
27   Sobol's findings. *See id.* (stating "it would be difficult to argue convincingly that sitting
28   for six hours during an eight-hour day does not qualify as 'prolonged' sitting").  The ALJ

Page 7

1   did not interpret or discuss this conflict in the medical evidence, nor did the ALJ provide

2   any reasons for rejecting the above mentioned portion of Dr. Sobol's opinion in favor of

3   the non-examining medical expert.  Nevertheless, any error in the ALJ's consideration

4   of Dr. Sobol's opinion was harmless, given the testimony offered by the VE.  *See Embrey*

5   *v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988)(when ALJ poses hypothetical question

6   to VE, the question must set forth all of the claimant's limitations); *see Curry*, 925 F.2d

7   at 1131.

8           At the hearing, the ALJ posed a hypothetical question to the VE which included

9   the restriction against "prolonged sitting," as assessed by Dr. Sobol.    [AR at 250, 435-

10  36]; *see Booth*, 181 F.Supp.2d at 1108.  Specifically, the ALJ asked the VE to consider

11  a person with Plaintiff's vocational background, education, and age, who is able to lift

12  up to 20 pounds occasionally and ten pounds frequently (with the use of wrist splints),

13  stand and walk two hours in an eight-hour workday at 15 minute intervals*, sit up to one*

14  *hour at a time for a cumulative number of six hours in an eight-hour workday*,

15  occasionally grip and handle, occasionally use the right hand for gross and fine

16  manipulation, and is unable to work at heights or climb.  [AR at 435-36.]  The VE

17  testified that such a person would be capable of performing Plaintiff's past work as a

18  certified public accountant and accountant professional.  [AR at 436.]  Because the VE's

19  testimony provides the basis for the ALJ's Step 4 finding that Plaintiff retained the

20  capacity to perform his past work, the ALJ's error in failing to provide reasons for

21  rejecting Dr. Sobol's opinion was harmless.  [AR at 28]; *see Curry*, 925 F.2d at 1131.

22  Accordingly, remand for further proceedings is not warranted in this case.

23

24                          **IV.  <u>CONCLUSION</u>**

25          The Court finds the ALJ's determination of non-disability is free of legal error and

26  supported by substantial evidence in the record.  Therefore, Plaintiff's request for an

27  order directing the payment of benefits or remanding this case for further proceedings is

28  DENIED, and the Commissioner's request for an order affirming the Commissioner's

1   final decision and dismissing the action is GRANTED.  The clerk shall enter judgment,

2   close the file and terminate all pending motions.

3

4   DATED: October 13, 2006        /s/ Arthur Nakazato

                                      ARTHUR NAKAZATO

5                               UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28